**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IOT INNOVATIONS LLC,
Plaintiff,
v.
LEGRAND NORTH AMERICA, LLC,
Defendant.

Civil Action No. 2:26-cv-00987

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff IoT Innovations LLC ("IoT Innovations" or "Plaintiff") files this Complaint against Legrand North America, LLC ("Defendant" or "Legrand"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), copies of which are available, respectively, at the links below:

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| A. | 7,165,224 | Image Browsing and Downloading in Mobile Networks | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7165224 |
| B. | 7,974,260 | Method of Transmitting Time-Critical Scheduling Information Between Single Network Devices In A Wireless Network Using Slotted Point-To-Point Links | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7974260 |

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| C. | 9,008,055 | Automatic Remote Services Provided by a Home Relationship Between a Device and a Server | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9008055 |
| D. | 7,075,907 | Method for Signalling DTX Periods and Allocation of New Channels in a Statistical Multiplexed Radio Interface | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7075907 |
| E. | RE44,742 | Dynamic Message Templates And Messaging Macros | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44742 |
| F. | 7,593,428 | Apparatus, and Associated Method for Forming, and Operating Upon, Multiple-Checksum-Protected Data Packet | USPTO.GOV, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593428 |

2. IoT Innovations seeks injunctive relief and monetary damages.

**PARTIES**

3. IoT Innovations is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4. Upon information and belief, Defendant Legrand North America, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 60 Woodlawn Street, West Hartford, Connecticut 06110.

5. Defendant may be served with process through its registered agent, The Corporation Trust Company, located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

6. Upon information and belief, Defendant is a member of the Legrand group of companies and, directly and through its brands and affiliates—including Legrand AV, Netatmo,

Luxul, Wattstopper, ZPE Systems, Raritan, Server Technology, BTicino, and Ensto—designs, manufactures, imports, markets, sells, and offers for sale in the United States the Accused Products identified below.

7. Upon information and belief, Defendant owns, operates, advertises, and/or controls, directly or through its affiliates, at least the websites http://legrand.us, http://legrandav.com, and http://netatmo.com (and related domains), through which it advertises, sells, offers to sell, provides, and/or educates customers about its products and services, including the Accused Products.

**JURISDICTION AND VENUE**

8. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business serving this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11. Defendant offers products and services, including through the use and/or testing of the Accused Products, and conducts business in this District.

12. Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in this judicial District, including: (i) at least a portion of the infringements alleged herein; and (ii)

regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

13. Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

14. Upon information and belief, Legrand has a corporate office located at 2240 Campbell Creek Blvd., Suite 110, Richardson, Texas 75082, and a location at 8707 Chancellor Row, Dallas, Texas 75247, which serves customers and residents of this district. Upon information and belief, Legrand serves customers and residents of this district through those locations.




Source: GOOGLE.COM (Legrand Corporate Office in Richardson, Texas)

15. Defendant provides cloud services and mobile applications—including the Netatmo

Home + Security application, the Netatmo Home + Control application, and the associated server-based platform—to residents of the State of Texas, including residents of this District.

16. U.S. customers, including customers in Texas and in this District, can purchase Defendant's Legrand, Legrand AV, and Netatmo brand products, including the Accused Products, through Defendant's websites and through U.S. retailers and distributors, including retailers and distributors with locations in this District.

17. Defendant has committed acts of direct and/or indirect patent infringement in this District, in Texas, and throughout the United States, giving rise to this action. As such, Defendant has sufficient minimum contacts with Texas such that personal jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice.

18. Defendant uses these locations to sell, distribute, and support its products, including the Accused Products, for customers and residents of this District as described below.

19. Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ACCUSED PRODUCTS

20. IoT Innovations repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

21. Based upon public information, Defendant owns, operates, and/or controls the websites and domains http://legrand.us, http://legrandav.com, and http://netatmo.com, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

22. Upon information and belief, Legrand acquired Netatmo, a French smart home

company, and Legrand, through its subsidiary Netatmo, offers smart home products and associated mobile applications in the United States.

23. Defendant makes, uses, causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes: its smart home security solutions (including the Netatmo Smart Indoor Camera (formerly known as Netatmo Welcome), the Netatmo Home + Security mobile application and associated server-based platform, the Netatmo Smart Outdoor Camera with Siren, the Netatmo Smart Video Doorbell, the Indoor Camera Advance, the Netatmo Smart Smoke Alarm, the Smart Air Quality Monitor / Healthy Home Coach, the Netatmo Home + Control application, and the Netatmo Weather application and Smart Home Weather Station); its Bluetooth audio solutions (including the Legrand USB Bluetooth Receiver, the Bluetooth Audio Receiver with NFC, the On-Q Bluetooth Receiver (AU8001), the AU7100 Digital Audio Bluetooth Receiver, and the DALI multisensor advanced detector and Light-Up-Zone DALI multisensor advanced detector); its LTE-enabled solutions (including the Networked Level 2 EV Charger, and LTE-enabled chargers, cellular modems, serial consoles, routers, gateways, and servers offered under brands including ZPE Systems (e.g., Nodegrid products), BTicino, Ensto, and Raritan); and its IEEE 802.11-enabled wireless solutions (including the Multi-Gig Access Point (AP-3064) Series, the XAP-1510, XAP-1610, XAP-810, and XAP-1440 access points, the XWS-2620, XWS-2520, and XWS-2510 wireless controller systems, the P40 WiFi bridge, the WS-250, WS-260, and WS-80 wireless kits, the XWR-3150 and XWR-1200 routers, gateways, Smarther with Netatmo smart thermostats, intelligent PDUs, indoor cameras, and media players offered under brands including Legrand AV, Luxul, Netatmo, ZPE Systems, Raritan, Server Technology, BTicino, and Ensto); and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any

associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products"). *See* **Exhibits A–F** (Evidence of Use Charts Regarding Infringement of the Asserted Patents).

24. Defendant also instructs its customers, agents, employees, and affiliates regarding how to use the Accused Products.

25. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,165,224**

26. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

27. The USPTO duly issued U.S. Patent No. 7,165,224 (hereinafter, the "'224 patent") on January 16, 2007, after full and fair examination of Application No. 10/262,969, which was filed on October 3, 2002. *See* '224 patent at p. 1.

28. IoT Innovations owns all substantial rights, interest, and title in and to the '224 patent, including the sole and exclusive right to prosecute this action and enforce the '224 patent against infringers and to collect damages for all relevant times.

29. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '224 patent.

30. The claims of the '224 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of image management on mobile devices, including by storing a miniaturized version of an image on the device, offloading

the full image to external storage, and retrieving the full image over a wireless network upon selection of the miniaturized version.

31. The written description of the ’224 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

32. Defendant has directly infringed the claims of the ’224 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Netatmo Smart Indoor Camera (formerly known as Netatmo Welcome) and its associated mobile application and cloud backup functionality.

33. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’224 patent, as detailed in the Evidence of Use attached as Exhibit A. As shown in Exhibit A, Defendant, through the use and provision of the Accused Products, performs a method of viewing an image on a mobile device, the method comprising the steps of: storing in the mobile device a miniaturized version of an image being stored in the mobile device; transferring the image to an external storage device; deleting the image from the mobile device; detecting selection of the miniaturized version of the image; in response to detecting selection of the miniaturized version of the image, sending via a wireless communication network a first message requesting transfer of the image to the mobile device; and receiving a second message via the wireless communication network transferring the image to the mobile device.

34. IoT Innovations has been damaged as a result of the infringing conduct by Defendant

as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,974,260**

35. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36. The USPTO duly issued U.S. Patent No. 7,974,260 (hereinafter, the "'260 patent") on July 5, 2011, after full and fair examination of Application No. 10/489,269, which was filed on September 10, 2001. *See* '260 patent at p. 1.

37. IoT Innovations owns all substantial rights, interest, and title in and to the '260 patent, including the sole and exclusive right to prosecute this action and enforce the '260 patent against infringers and to collect damages for all relevant times.

38. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '260 patent.

39. The claims of the '260 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of wireless communication networks by transmitting, from a first device to a second device, a data sequence whose header includes an active member address of the second device and whose payload includes timing control information defining when the second device communicates.

40. The written description of the '260 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41. Defendant has directly infringed the claims of the ’260 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Legrand USB Bluetooth Receiver, the Bluetooth Audio Receiver with NFC, the On-Q Bluetooth Receiver (AU8001), the AU7100 Digital Audio Bluetooth Receiver, and the DALI multisensor advanced detector and Light-Up-Zone DALI multisensor advanced detector.

42. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 5 of the ’260 patent, as detailed in the Evidence of Use attached as Exhibit B. As shown in Exhibit B, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method of transmitting timing control information from a first device to a second device in a communication network, the method comprising: defining a data sequence at a first device, the data sequence including a header portion and a payload portion, wherein the header portion includes an address code of a second device and the payload portion includes timing control information for communicating packets between devices in a communication network wherein the timing control information defines when the second device communicates, wherein the address code is a first active member address of the second device, and wherein the first active member address and a second active member address are assigned to the second device; and transmitting the defined data sequence in a data communication packet from the first device to the second device in a time defined contact slot.

43. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it

for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,008,055**

44. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

45. The USPTO duly issued U.S. Patent No. 9,008,055 (hereinafter, the "'055 patent") on April 14, 2015, after full and fair examination of Application No. 10/903,931, which was filed on July 29, 2004. *See* '055 patent at p. 1.

46. IoT Innovations owns all substantial rights, interest, and title in and to the '055 patent, including the sole and exclusive right to prosecute this action and enforce the '055 patent against infringers and to collect damages for all relevant times.

47. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '055 patent.

48. The claims of the '055 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of networked devices by automatically providing remote services to a mobile device having an established relationship with a server of a home network, including when the mobile device connects through a separate, remote local network.

49. The written description of the '055 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

50. Defendant has directly infringed the claims of the ’055 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Netatmo Home + Security mobile application and associated server-based platform, which integrate with smart devices such as smart cameras, smart video doorbells, and smart lights, including the Netatmo Smart Indoor Camera, together with additional connected devices and applications including the Netatmo Smart Outdoor Camera with Siren, Netatmo Smart Door Bell, Indoor Camera Advance, Netatmo Smart Smoke Alarm, Smart Air Quality Monitor / Healthy Home Coach, and the Netatmo Home + Control application.

51. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’055 patent, as detailed in the Evidence of Use attached as Exhibit C. As shown in Exhibit C, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method for automatically providing remote services for a mobile device having an established relationship with a server of a home network, comprising: receiving, by the server, information that was stored in the mobile device when the established relationship was established when the mobile device establishes an Internet connection through a local network that is separate and remote from the home network, wherein establishing the established relationship includes allowing the user to set preferences that identifies at least one service that is automatically performed between the mobile device and the server when a connection is made; and if the mobile device is recognized through the received information, automatically activating at least one function within the server to initiate a transfer of data between the mobile device and the server through the local network.

52. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53. IoT Innovations has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '055 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

54. Defendant had knowledge of the '055 patent at least as of the date when it was notified of the filing of this action.

55. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '055 patent by inducing others to directly infringe said claims.

56. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '055 patent by providing or requiring use of the Accused Products, including at least the Netatmo Home + Security mobile application and associated server-based platform.

57. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '055 patent, including, for example, claim 1 of the '055 patent.

58. Such steps by Defendant included, among other things, advising or directing

personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

59. Defendant is performing these steps, which constitute induced infringement with the knowledge of the ’055 patent and with the knowledge that the induced acts constitute infringement.

60. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the ’055 patent.

61. Defendant’s inducement is ongoing.

62. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the ’055 patent.

63. Defendant has contributed to the direct infringement of the ’055 patent by its personnel, contractors, and customers.

64. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’055 patent, including, for example, claim 1 of the ’055 patent. The special features constitute a material part of the invention of one or more of the claims of the ’055 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit C, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’055 patent.

65. Defendant’s contributory infringement is ongoing.

66. Furthermore, on information and belief, Defendant has a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations' patent rights.

67. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

68. Defendant's direct infringement of one or more claims of the '055 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations' rights under the patent.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,075,907**

69. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70. The USPTO duly issued U.S. Patent No. 7,075,907 (hereinafter, the "'907 patent") on July 11, 2006, after full and fair examination of Application No. 09/587,993, which was filed on June 6, 2000. *See* '907 patent at p. 1.

71. IoT Innovations owns all substantial rights, interest, and title in and to the '907 patent, including the sole and exclusive right to prosecute this action and enforce the '907 patent against infringers and to collect damages for all relevant times.

72. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '907 patent.

73. The claims of the '907 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of wireless telecommunications systems by signalling a temporary cessation of frame transmission and

enabling the network to determine whether a traffic channel assigned to a mobile station can be retained or must be released, thereby improving the efficient allocation of channel resources.

74. The written description of the ’907 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75. Defendant has directly infringed the claims of the ’907 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Networked Level 2 EV Charger, and LTE-enabled chargers, cellular modems, serial consoles, routers, gateways, and servers offered under brands including ZPE Systems, BTicino, Ensto, and Raritan.

76. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’907 patent, as detailed in the Evidence of Use attached as Exhibit D. As shown in Exhibit D, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method for operating a wireless telecommunications system, comprising steps of: signalling, between a mobile station to a network, that one of the mobile station or the network is temporarily ceasing transmission of frames; at the network and in response to the signalling that one of the mobile station or the network is temporarily ceasing transmission of frames, determining if a current traffic channel that is assigned to the mobile station can be retained by the mobile station, or whether the current traffic channel must be released by the mobile station; and if it is determined that the current traffic channel must be released by the mobile station, signalling from the network to the mobile station

to release the channel.

77. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. RE44,742**

78. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

79. The USPTO duly issued U.S. Patent No. RE44,742 (hereinafter, the "'742 patent") on February 4, 2014 after full and fair examination of Application No. 13/542,351 which was filed on July 5, 2012. *See* '742 patent at 1. The '742 patent is a reissue of U.S. Patent No. 7,751,533. *See id.* at 12.

80. IoT Innovations owns all substantial rights, interest, and title in and to the '742 patent, including the sole and exclusive right to prosecute this action and enforce the '742 patent against infringers and to collect damages for all relevant times.

81. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '742 patent.

82. The claims of the '742 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting template-based messaging systems.

83. The written description of the '742 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

84. Defendant has directly infringed the claims of the ’742 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Netatmo Home + Security mobile application, together with connected devices including the Netatmo Smart Indoor Camera, and the Netatmo Weather application and Smart Home Weather Station.

85. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 1 of the ’742 patent, as detailed in the Evidence of Use attached as Exhibit E. As shown in Exhibit E, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method comprising: executing an application at a device, wherein message context data including message context data items is associated with the executing application; selecting a selected message context data item from the message context data associated with the executing application; and automatically inserting the selected message context data item in a dynamic field of a template to facilitate the creation of a message to send from the device.

86. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

87. IoT Innovations has suffered irreparable harm, through its loss of market share and

goodwill, for which there is no adequate remedy at law. IoT Innovations has and will continue to suffer this harm by virtue of Defendant's infringement of the '742 patent. Defendant's actions have interfered with and will interfere with IoT Innovations' ability to license technology. The balance of hardships favors IoT Innovations' ability to commercialize its own ideas and technology. The public interest in allowing IoT Innovations to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

88. Defendant had knowledge of the '742 patent at least as of the date when it was notified of the filing of this action.

89. Upon information and belief, Defendant has also indirectly infringed one or more claims of the '742 patent by inducing others to directly infringe said claims.

90. Defendant has induced end-users, including, but not limited to, Defendant's employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '742 patent by providing or requiring use of the Accused Products.

91. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '742 patent, including, for example, claim 1 of the '742 patent.

92. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on how to use the Accused Products in an infringing manner.

93. Defendant is performing these steps, which constitute induced infringement with the

knowledge of the ’742 patent and with the knowledge that the induced acts constitute infringement.

94. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the ’742 patent.

95. Defendant’s inducement is ongoing.

96. Upon information and belief, Defendant has also indirectly infringed by contributing to the infringement of the ’742 patent.

97. Defendant has contributed to the direct infringement of the ’742 patent by its personnel, contractors, and customers.

98. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’742 patent, including, for example, claim 1 of the ’742 patent. The special features constitute a material part of the invention of one or more of the claims of the ’742 patent and are not staple articles of commerce suitable for substantial non-infringing use. In fact, as shown in Exhibit E, the primary purpose of the Accused Products is to act and operate in a way that infringes the ’742 patent.

99. Defendant’s contributory infringement is ongoing.

100. Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of IoT Innovations’ patent rights.

101. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

102. Defendant’s direct infringement of one or more claims of the ’742 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of IoT Innovations’

rights under the patent.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,593,428

103. IoT Innovations repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

104. The USPTO duly issued U.S. Patent No. 7,593,428 (hereinafter, the "'428 patent") on September 22, 2009, after full and fair examination of Application No. 11/621,545 which was filed on January 9, 2007. *See* '428 patent at p. 1.

105. IoT Innovations owns all substantial rights, interest, and title in and to the '428 patent, including the sole and exclusive right to prosecute this action and enforce the '428 patent against infringers and to collect damages for all relevant times.

106. IoT Innovations or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '428 patent.

107. The claims of the '428 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function, operation, and security of data communications by selectively providing extended checksum protection to data packets communicated between communication stations, enabling more reliable and secure transmission of data across networks.

108. The written description of the '428 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of

the invention.

109. Defendant has directly infringed the claims of the ’428 patent by making, using, selling, offering for sale, importing, providing, supplying, or distributing the Accused Products, including at least the Multi-Gig Access Point (AP-3064) Series and other IEEE 802.11-enabled access points, wireless controller systems, WiFi bridges, router kits, routers, gateways, smart thermostats, intelligent PDUs, indoor cameras, WiFi kits, and media players offered under brands including Legrand AV, Luxul, Netatmo, ZPE Systems, Raritan, Server Technology, BTicino, and Ensto.

110. As just one example, Defendant has directly infringed and continues to infringe, either literally or under the doctrine of equivalents, claim 14 of the ’428 patent, as detailed in the Evidence of Use attached as Exhibit F. As shown in Exhibit F, Defendant, using the Accused Products and their associated hardware and software and functionalities, performs a method comprising: receiving data from a data source at a transceiver station; and in response to programmed instructions in processing circuitry at the transceiver station; selecting a first portion of the data to be protected by a first checksum and selecting a second portion of the data to be protected by a second checksum; performing a first checksum calculation upon the selected first portion and performing at least a second checksum calculation upon the selected second portion; and formatting the data into a packet-formatted data packet, wherein the packet-formatted data packet comprises the selected first portion, indicia associated with the first checksum calculation, the selected second portion, and indicia associated with the second checksum calculation.

111. IoT Innovations has been damaged as a result of the infringing conduct by Defendant as alleged above. Thus, Defendant is liable to IoT Innovations in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with

interest and costs as fixed by this Court under 35 U.S.C. § 284.

**JURY DEMAND**

112. IoT Innovations hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

113. IoT Innovations requests that the Court find in its favor and against Defendant, and that the Court grant IoT Innovations the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the ’055 patent and the ’742 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patent by such entities;

c. Judgment that Defendant account for and pay to IoT Innovations all damages to and costs incurred by IoT Innovations because of Defendant’s infringing activities and other conduct complained of herein;

d. Judgment that Defendant’s infringements be found willful as to the ’055 patent and the ’742 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant’s infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award IoT Innovations its

reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 31, 2026

Respectfully submitted,

*/s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

***Attorneys for Plaintiff IOT INNOVATIONS LLC***

* admitted to the Eastern District of Texas

**Exhibits**

A. Evidence of Use Chart for U.S. Patent No. 7,165,224
B. Evidence of Use Chart for U.S. Patent No. 7,974,260
C. Evidence of Use Chart for U.S. Patent No. 9,008,055
D. Evidence of Use Chart for U.S. Patent No. 7,075,907
E. Evidence of Use Chart for U.S. Patent No. RE44,742
F. Evidence of Use Chart for U.S. Patent No. 7,593,428